[Cite as *State v. Wilson*, 2012-Ohio-3567.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No.   97465

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ALTEZ WILSON

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No.   CR-550499

**BEFORE:**   Keough, J., Sweeney, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   August 9, 2012

**ATTORNEY FOR APPELLANT**

Michael B. Telep
4438 Pearl Road
Cleveland, OH 44109

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Jeffrey S. Schnatter
        Justin S. Gould
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Altez Wilson, appeals his convictions. For the reasons that follow, we affirm.

{¶2} In May 2011, Wilson was charged with one count each of aggravated burglary in violation of R.C. 2911.11(A)(2), grand theft in violation of R.C. 2913.02(A)(1), and theft in violation of R.C. 2913.02(A)(1). Each count contained a one-year firearm specification. Wilson pled not guilty and waived his right to a jury trial. Prior to the start of trial, the State moved to amend the aggravated burglary charge to burglary in violation of R.C. 2911.12(A)(2) with a one-year firearm specification. Thereafter, the case was tried to the bench where the following evidence was presented.

{¶3} On May 17, 2011 at 1:25 p.m., Officer Richard Varndell and his partner Officer Muniz received a dispatch call to respond to a Miles Road residence that had been burglarized. According to Officer Varndell, dispatch advised them that two males entered the house, and a third male acted as a lookout on the porch. He testified that when he and his partner were about eight to ten blocks away from the Miles Road address, he saw three males crossing the street southbound from where the Miles Road address would have been. He described one of the males as shorter, carrying a bag, and the two other males as four to five inches taller. As they approached, Officer Varndell

testified that he saw one of the taller males hand a bag described as a "Coach-like" bag to the other taller male, who was later identified as Wilson. Although they were still four to five blocks away, Officer Varndell testified that he had a clear and unobstructed view of the three males.

{¶4} When the males saw the police officers, two of them dropped the bags and ran, and Officer Muniz chased them on foot. According to Officer Varndell, when he exited the zone car, Wilson looked like he was going to run, but Officer Varndell apprehended him and secured him in the zone car. Approximately ten feet from where Wilson was apprehended, a brown designer bag and a blue bag containing two rifles, a pistol, laptop computer, PlayStation controller, and a Bose speaker system were recovered. After Wilson was removed from the zone car, the officers discovered two PlayStation video games under the seat where Wilson was seated.

{¶5} Melvin Allmond testified he received a telephone call while at work that the police were at his house. When he arrived home, he found his front window broken and his house ransacked. In the trunk of the police zone car parked at his house, he saw his firearms, PlayStation controller, laptop computer, and Bose equipment in a gym bag. Throughout his house, his personal belongings had been removed, rummaged through, and some items were missing from their original locations.

{¶6} Officer Toler testified that he received the assignment to investigate this burglary. As part of the investigation, he conducted an interview with Wilson, which he

audiotaped. Over objection, the trial court allowed the State to play the recorded interview. After the tape was played, the State questioned Detective Toler:

> Q: You heard in the recording that Mr. Wilson said the two that broke into the house and that I was a lookout?
> [Objection made and overruled by the trial court]
> Q: Did you hear that?
> A: I did.

Detective Toler further testified that the two other males in connection with this crime were not apprehended.

{¶7} Over objection, the State played the 911 call regarding the burglary. The caller, who was unidentified, stated to dispatch that he was calling regarding a break-in at 11109 Miles Road. Although the recording is somewhat difficult to understand, the caller states that two men went inside the home and another man was either on the porch or at the corner on his phone. The unidentified caller stated that he witnessed these individuals prior to making the call, but that he was unable to see them during the call. Moreover, the caller was unable to give a description of the three males to the dispatch operator.

{¶8} The trial court denied Wilson's Crim.R. 29 motion for judgment of acquittal. After deliberating, the court found Wilson guilty of all counts, including the firearm specifications, and sentenced him to three years in prison.

{¶9} Wilson now appeals, raising four assignments of error, which will be addressed together and out of order where appropriate.

## I. Crim.R. 16 Discovery

{¶10} In his fourth assignment of error, Wilson contends the trial court abused its discretion when it admitted into evidence a police interrogation recording that was not provided to the defense in discovery.

{¶11} A trial court has broad discretion concerning the admission of evidence; in the absence of an abuse of discretion that materially prejudices a defendant, a reviewing court generally will not reverse an evidentiary ruling. *State v. Humberto*, 10th Dist. No. 10AP–527, 2011-Ohio-3080, ¶ 25, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).

{¶12} Wilson argues the State violated Crim.R. 16 when it failed to provide or disclose the audio recorded interview with Wilson prior to trial. The State contends that trial counsel was provided with a typed summary of Wilson's oral statement that Detective Toler prepared after interviewing Wilson, and that the typed summary it indicated that "Wilsons [sic] statement was audiotyped [sic] and will be retained in [Detective Toler's] personal file." The State contends that this sentence in the "Oral statement of defendant Altez Wilson" summary prepared by Detective Toler put the defense on notice of the audio recording, and the defense either chose not to request it or listen to it prior to trial. Moreover, the State maintains that the error, if any, was harmless.

{¶13} Pursuant to Crim.R. 16(B)(1)(b), in pertinent part,

> Upon receipt of a written demand for discovery by the defendant, * * * the prosecuting attorney shall provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items * * * which are material to the preparation of a defense, or are intended for use by the

prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule:

(1) Any written or recorded statement by the defendant or a co-defendant, including police summaries of such statements, and including grand jury testimony by either the defendant or co-defendant;

* * *

(7) Any written or recorded statement by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal.

{¶14} In this case, Wilson requested discovery from the State on June 3, 2011. His request sought to inspect and copy:

1. Any statement of whatever kind or description within the possession of the City of the defendant, or of any co-defendant.

2. Written summaries of any and all oral statements made by the defendant * * * .

3. Any recorded testimony of the defendant * * * .

* * *

6. Any books, papers, documents, photographs, recordings, tangible objects or copies thereof available to or within the possession, custody or control of the City, and which are material to the Prosecuting Attorney as evidence at the trial or were obtained from or belong to the defendant. * * *

8. All evidence known, or which may become known, to the Prosecuting Attorney, favorable to the defendant, and material either to guilt or punishment.

{¶15} The State filed its initial response to discovery on June 7, 2011, indicating that the State had an "oral statement of defendant Altez Wilson." Additionally, the State listed it had personal property — Playstation games, 911 tape, photographs, and dispatch audio. The response further provided that certain documents were delivered to the web portal for the defense, including a "'counsel only' defendant statement — oral statement of defendant Altez Wilson," and "Defendant statement."

{¶16} On the same day, June 7, the State filed its first supplemental discovery response, indicating that certain audio recordings were placed on the web portal, including three 911 audio recordings and one dispatch audio recording. On June 10 and 13, the State filed two additional supplemental discovery responses, disclosing additional police reports, fingerprint reports, photographs, and witnesses. On July 20, the State filed a fourth supplemental discovery response, disclosing a "written statement of defendant Altez Wilson" and that the written statement was delivered to the discovery web portal for "counsel only."

{¶17} At trial and before Detective Toler testified, defense counsel was notified that the State intended to play the audio recorded interview with Wilson during Detective Toler's testimony. Defense counsel raised the issue of the State's nondisclosure of the audio recording and objected that this nondisclosure violated Crim.R. 16 and should be excluded. Defense counsel indicated that he was provided only with the typed one-page summary titled, "Oral statement of defendant Altez Wilson." Defense counsel acknowledged the sentence in the statement that Detective Toler had an audiotape of the

interview but maintained that the tape was only made available to him that morning and it was never known that the State intended to use it. The State responded that the oral summary was all that it was required to provide to defense counsel, and if the defense wanted the taped portion of the interview, which the summary indicated existed, then the defense should have asked for it. The State maintained that the "the summary is a fair summary of what is said in the tape." The trial court overruled Wilson's objection, stating that the State made the defense aware of the audio recording and it was defense's obligation to "check it out."

{¶18} Reviewing the State's discovery responses, we find that the State never disclosed an audio recording of the interview conducted by Detective Toler. Moreover, the State never supplemented its discovery responses in compliance with Crim.R. 16(B)(1), to indicate that it intended to use or had in its possession a recorded statement of Wilson. Although Detective Toler's typed summary indicated that the statement was audio recorded, that statement does not shift the burden to the defendant to seek out the recording, especially when the State does not list or indicate in its discovery responses that it possesses the audio recording. Accordingly, we find that the State violated Crim.R. 16 by not listing on its discovery responses that it possessed or possibly intended to use the audio recorded interview of Wilson; thus, the trial court should have precluded the State from introducing and playing the audio recording.

{¶19} We next turn to whether this violation was harmless error. Pursuant to Crim.R. 52(A), an error is harmless and should be disregarded unless it affects a

substantial right. In order to find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). A reviewing court may overlook an error where the remaining admissible evidence, standing alone, constitutes overwhelming proof of a defendant's guilt. *State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983). "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Brown,* 65 Ohio St.3d 483, 485, 1992-Ohio-61, 605 N.E.2d 46.

{¶20} We find that the admission and playing the audiotape of the interview with Wilson was harmless. After reviewing the audiotape, we find that the content of the interview did not materially prejudice the defendant. During the course of the interview, Wilson maintained his innocence, denying any involvement in the burglary, and no incriminating statements were made during the interview. Moreover, no statements outside the typed-up narrative that was given to defense counsel during discovery were made by Wilson.

{¶21} While we find the admission of the audio recording itself was not prejudicial, we are troubled with the mischaracterization of the content of the audio recording by the State and Detective Toler.

{¶22} During trial and over objection, the State played the audio recording of the interrogation. During the interrogation, Wilson can be heard repeatedly denying his involvement with the burglary and theft on Miles Road. The prosecutor, after playing

the tape, asked Detective Toler: "You heard on the recording that Mr. Wilson said the two that broke into the house and that I was a lookout?" "Did you hear that?" Over objection, Detective Toler responded: "I did."

{¶23} The State maintained during its closing arguments and on appeal that Wilson admitted that he acted as a lookout in this burglary. However, we find it highly suspect that Wilson actually made this admission because during the entire audio recording Wilson maintained his innocence and denied any involvement in the burglary.

{¶24} This case is not the first case reviewed by this court where the State mischaracterized the evidence and testimony and then used that mischaracterization in trial and on appeal. *See, e.g., State v. Williams*, 8th Dist. No. 95796, 2011-Ohio-5483; *State v. Hill*, 8th Dist. No. 95379, 2011-Ohio-2523; *State v. Jackson*, 8th Dist. No. 88074, 2007-Ohio-2494 (prosecutorial misconduct and mischaracterizations were not harmless error and required reversal of all 26 counts in the indictment charging rape, kidnapping, and gross sexual imposition even though overwhelming evidence of guilt was presented on a number of the counts). Again, we remind the State that this court does not condone this tactic and its continued use is abhorrent to the judicial system itself and the public's confidence in the judicial system.

{¶25} However, in this case, Wilson has not raised any assignment of error or made an argument concerning ineffective assistance of trial counsel, prosecutorial misconduct, or that the trial court committed error in overruling objections during Detective Toler's testimony. Wilson was represented by trial counsel who had the

opportunity to listen to the audio recording prior to Detective Toler's testimony and the opportunity to cross-examine Detective Toler about the contents of the recording, any admissions Wilson may have made during the interrogation, or any other ways Wilson's statements could be construed. Therefore, we find that although the State violated Crim.R. 16 by failing to disclose the audio recording, the contents of the recording were not prejudicial to Wilson; thus the trial court did not abuse its discretion in permitting the State to use the audio recording during trial. Any error committed during the trial regarding the interpretation of Wilson's statements made in the audio recording have not been raised in this appeal.

**{¶26}** Accordingly, Wilson's fourth assignment of error is overruled.

## II. Sufficiency of the Evidence

**{¶27}** In his first and second assignments of error, Wilson contends that his convictions for burglary and corresponding firearm specification were not supported by sufficient evidence.

**{¶28}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 942 (1991), paragraph two of the syllabus.

{¶29} In this case, Wilson was charged with burglary in violation of R.C. 2911.12(A)(2), which provides,

> no person by force, stealth, or deception, shall * * * trespass in an occupied structure or in a separately occupied portion of an occupied structure that is a permanent or temporary habitation of a person when any person other than the accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.

{¶30} The State's theory in this case was that Wilson was the lookout for the two unidentified individuals who entered the Miles Road residence. In support of its case, the State introduced a 911 call made by an unidentified caller who stated that he saw two men enter the Miles Road residence and "one guy was on his cell phone acting as a lookout." Additionally, Officer Varndell testified that he saw three males crossing the street near the Miles Road residence and exchanging bags between them. As he approached the males, two of them ran, while Wilson stayed and was apprehended. Located within ten feet of Wilson were the bags that contained the items taken from the Miles Road residence. Additionally, two of the stolen video games were found inside the police cruiser where Wilson was secured. This evidence was sufficient to sustain Wilson's conviction for burglary.

{¶31} The indictment also contained a corresponding one-year firearm specification in violation of R.C. 2941.141, which specifies that "the offender had a firearm on or about his person or under his control while committing the offense."

{¶32} Wilson raises two issues challenging the firearm specification. The first issue concerns guilt — whether R.C. 2941.141 contemplates that when a firearm is

removed from the premises in the commission of a burglary, the mere removal satisfies the standard that the offender has "a firearm on or about his person or under his control while committing the offense."

{¶33} In *State v. Powell*, 59 Ohio St.3d 62, 571 N.E.2d 125 (1991) (Holmes and Sweeney, JJ., dissenting) the Ohio Supreme Court stated in its syllabus that "[a] three-year additional term of actual incarceration may be imposed pursuant to R.C. 2929.71[1] if the defendant has a firearm in his or her possession at any time during the commission of a felony, even if the firearm is acquired by theft during the course of the felony." *Id.* at paragraph two of the syllabus. In *Powell*, the defendants broke into the victim's home and removed several items, including a loaded revolver, a rifle, and ammunition. The defendants were charged with aggravated burglary in violation of R.C. 2911.11(A)(3)[2] and with a three-year firearm specification. The court opined that the "crime of aggravated burglary continues so long as the defendant remains in the structure being burglarized because the trespass of the defendant has not been completed. Thus, when [the defendants] acquired the firearms by theft, they were still engaged in the commission of the aggravated burglary." *Id.* at 63. The court's reasoning extends to the lesser crime of burglary because the act of burglary also requires a criminal trespass. *See State v. Stewart*, 8th Dist. No. 86397, 2006-Ohio-1071, ¶ 20.

---

[1]R.C. 2929.71 has been recodified under R.C. 2941.141.

[2]R.C. 2911.11(A)(3) has been recodified to burglary under R.C. 2911.12(A)(2).

**{¶34}** The *Powell* court further concluded that R.C. 2929.71 "does not require that the firearm be used in the commission of the felony, or that the defendant acquire the firearm before beginning the crime; all that is necessary is that the defendant have the firearm on his person or under his control at some point during the commission of the crime." *Id.*; *see also State v. Young*, 5th Dist. No. 02CA00012, 2002-Ohio-4057.

**{¶35}** Applying the *Powell* holding, we find that the evidence was sufficient to satisfy the firearm specification because the evidence showed that various firearms were removed from the victim's house and were located in two separate gym bags that Officer Varndell saw being exchanged between three males, one of which was Wilson. This evidence, along with the 911 call implicating three males — two gaining access into the home and one acting as a lookout — when viewed in the light most favorable to the prosecution is sufficient to sustain the firearm specification.

**{¶36}** The second issue Wilson raises surrounding the firearm specification is that he is being punished twice for the firearm specification and for grand theft because the premise for grand theft was the theft of the guns, and the premise for the firearm specification was the guns. It appears that Wilson is arguing that grand theft and the firearm specification are allied offenses. In *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, the Ohio Supreme Court conclusively stated that a firearm specification is not a criminal offense; rather, it is a sentence enhancement. "We hold that R.C. 2941.145 and 2929.14(D) define a sentence enhancement that attaches to a

predicate offense." *Id.* at ¶ 16. "Penalties for a specification and its predicate offense do no merge under R.C. 2941.25." *Id.*, at paragraph two of the syllabus.

Accordingly, Wilson's first and second assignments of error are overruled.

### III. Manifest Weight of the Evidence

**{¶37}** In his third assignment of error, Wilson contends his convictions are against the manifest weight of the evidence.

**{¶38}** The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶39}** In addition to the burglary and firearm specifications, Wilson was charged with grand theft in violation of R.C. 2913.02(A)(1) for taking the firearms, and theft in violation of R.C. 2913.02(A)(1) for taking the other items, including "a purse, laptop computer, gym bag, PlayStation controller, Bose system."

**{¶40}** We cannot say that the trial court lost its way and created a manifest miscarriage of justice in finding Wilson guilty of the indictment as amended. The evidence showed that three males were seen at the Miles Road residence, with two men going inside the house and one acting as a lookout. Within minutes, Officer Varndell saw three men carrying bags and passing them amongst each other while crossing the street in the vicinity of the Miles Road residence; Wilson was one of the males. As Officer Varndell approached, two of the men fled dropping the bags. Wilson was apprehended within ten feet of the bags that contained the items taken from the Miles Road house, including three firearms. Additionally, two of the video games taken from the residence were found in the zone car where Wilson was secured.

**{¶41}** Accordingly, we find that Wilson's convictions were not against the manifest weight of the evidence.

**{¶42}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

JAMES J. SWEENEY, P.J., and
KENNETH A. ROCCO, J., CONCUR