[Cite as *State v. Amborski*, 2012-Ohio-4714.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97615**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TONY E. AMBORSKI

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546827

**BEFORE:**   Blackmon, A.J., Boyle, J., and Keough, J.

**RELEASED AND JOURNALIZED:**   October 11, 2012

**ATTORNEYS FOR APPELLANT**

Regis E. McGann
600 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

Andy Petropouleas
Allison S. Lawson
John W. Martin Co. & Associates, L.P.A.
75 Public Square, Suite 1414
Cleveland, Ohio 441113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Daniel B. South
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 4113

PATRICIA ANN BLACKMON, A.J.:

{¶1} Appellant Tony Amborski appeals his conviction and sentence. Amborski assigns the following errors for our review:

> **I. Defendant's conviction for discharge of a firearm on or near prohibited premises was unsupported by sufficient evidence and the manifest weight of the evidence as the state of Ohio presented no testimony that the defendant's firing a weapon into the air created a substantial risk of physical harm to any person or actually caused serious physical harm to property.**

> **II. The trial court erred when it denied defendant's request to include a self defense instruction that accounted for the defendant's evidence that he used non-deadly force in response to his assailant.**

> **III. Firearm specifications should not be enhancements for the offense of discharge of a firearm on or near a prohibited premises where the use of a firearm was an essential element of the underlying offense.**

> **IV. The state discovery violations stripped the defendant of his right to a fair trial.**

{¶2} Having reviewed the record and pertinent law, we affirm Amborski's convictions. The apposite facts follow.

{¶3} On March 1, 2011, the Cuyahoga County Grand Jury indicted Amborski on one count each of discharge of a firearm on or near prohibited premises and felonious assault with one-and three-year firearm specifications attached. The grand jury also indicted Amborski on two counts each of improperly handling firearms in motor vehicle and driving while under the influence of alcohol.

**{¶4}** In addition, the grand jury indicted Amborski on one count of possession of criminal tools. On March 16, 2011, Amborski pleaded not guilty at his arraignment. Several pretrials were conducted and on September 15, 2011, a jury trial commenced.

## Jury Trial

**{¶5}** Nineteen witnesses testified at the trial. As to the specific and detailed testimony presented, we will discuss these facts below when addressing the corresponding assigned errors.

**{¶6}** The testimony established that on January 30, 2011, at the Number 1 Lounge in Parma, Ohio, a fist fight broke out between Amborski and Edward Seegert. Several witnesses testified that Amborski and Seegert have had a long-standing feud.

**{¶7}** On the night in question, both men consumed varying amounts of alcohol, when Amborski accused Seegert of flirting with his fiancee, the barmaid of the lounge. During the fight, Seegert got the upper hand, pinned down and pummeled Amborski. Seegert eventually released Amborski and then went outside to cool off. Several of the lounge's patrons followed.

**{¶8}** In the meantime, Amborksi went to his car, retrieved a handgun, and began walking towards Seegert. Upon seeing the gun, Seegert fled in the direction of Ridge Road. Amborski fired three to four shots at Seegert. Amborski returned to his car, drove away, but was stopped by city of Parma police officers, and was subsequently arrested.

{¶9} Cindy Tucky, a patron of the lounge that night, testified that she separated Seegert and Amborski as they were wrestling on the ground. Tucky also testified that she was present when Amborski returned with the handgun. According to Tucky, Seegert started running when Amborski fired the first shot. Tucky stated that Amborski held the gun straight out at Seegert.

{¶10} Derek Nemes, another of the lounge's patrons, testified that he observed Seegert and Amborski bickering throughout the evening, observed the fist fight between the two, and was also present when the shots were fired. According to Nemes, Amborski held the gun parallel with his eyes, pointing straight out. Nemes stated that Amborski fired three shots and that some of the casings flew past his face because he was standing so close to Amborski.

{¶11} Michael Bammerlin, Jr., who lived directly across the street from the Number 1 Lounge, testified that he was up late on the night in question with a sick child, and observed the two men fighting. Bammerlin saw Amborski fire two or three shots at Seegert, who was running away. Bammerlin stated that Amborski walked towards Ridge Road and fired another shot up in the air. Amborski returned to his car and proceeded to drive in the direction in which Seegert had fled.

{¶12} Nicholas Vidovich, who lived five houses from the Number 1 Lounge, testified that he heard commotion coming from the bar while he was practicing yoga. Vidovich observed Amborski walk to his car, retrieve something from the passenger's side, walk back to where the patrons were gathered, and proceed to fire the gun several

times. Vidovich heard a woman yell to Amborski that he should "just get out of here." Amborski then returned to his car and drove away. Vidovich opined that Amborski was not shooting directly at anyone.

{¶13} Amborski took the stand in his own defense and testified that he had one beer and two shots of alcohol on the night in question. Amborski stated that the fight started after Seegert made several derogatory, racial, and homophobic comments. Amborski stated that during the fight, Seegert was on top and choking him, while other patrons were kicking him in his head. According to Amborski, he went to his car, retrieved his handgun, and fired warning shots in the air, while standing at the passenger's side of his car. Amborski said he fired the shots because he feared for his life.

{¶14} On September 26, 2011, the jury found Amborski guilty of discharge of a firearm on or near prohibited premises with the firearm specifications attached. The jury also found Amborski guilty of both counts of improperly handling firearms in a motor vehicle and a single count of driving while under the influence of alcohol. On November 2, 2011, the trial court sentenced Amborski to an aggregate prison term of four years.

### Sufficiency and Manifest Weight of Evidence

{¶15} In the first assigned error, Amborski argues his conviction for discharge of a firearm on or near prohibited premises was unsupported by sufficient evidence and was against the manifest weight of the evidence.

{¶16} A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the state has met its burden of production at trial. *State v. Givan*, 8th Dist. No. 94609, 2011-Ohio-100, citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id*. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶17} In the instant case, the jury found Amborski guilty of violating R.C. 2923.162, which provides in pertinent part as follows:

**(A) No person shall do any of the following:**

**(3) Discharge a firearm upon or over a public road or highway.**

{¶18} Here, it is undisputed that Amborski discharged his firearm several times on the date in question. Several state witnesses including Bammerlin and Vidovich, two disinterested parties, who lived across the street from the Number 1 Lounge, testified that they observed Amborski discharging the weapon several times. Amborski does not deny discharging the weapon, but only contends that he fired warning shots in the air, a claim disputed by several witnesses.

**{¶19}** However, whether Amborski fired warning shots as he contends, does not negate that it could have resulted in serious physical harm. At trial, Tucky, Nemes, Bammerlin, and Vidovich all testified that Amborski fired at least one shot in the direction of Ridge Road as Seegert fled the scene. Thus, whether they were interested or disinterested witnesses, they all testified that Amborski fired across a public road or highway.

**{¶20}** Further, because several patrons were gathered outside the lounge and in the immediate vicinity, Amborski's discharge of the firearm created a substantial risk of physical harm to any those present. Consequently, this evidence, if believed, would support Amborski's conviction. As such, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged crime proven beyond a reasonable doubt.

**{¶21}** Nonetheless, Amborski argues his conviction is against the manifest weight of the evidence.

**{¶22}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court restated the standard of review for a criminal manifest weight challenge as follows:

> **The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these**

concepts differ both qualitatively and quantitatively. *Id*. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id*. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id*. at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶23} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs

heavily against the conviction." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶24} Amborski argues the state's witnesses were not credible. However, while a reviewing court considers the credibility of the witnesses in a weight of the evidence review, "that review must nevertheless be tempered by the principle that weight and credibility are primarily for the trier of fact," in this case the jury, because they are in "the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Kash*, 1st Dist. No. CA2002-10-247, 2002-Ohio-415, ¶ 25, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶25} Consequently, after reviewing the entire record, we conclude that this is not the exceptional case in which the evidence weighs heavily against the conviction. Accordingly, we overrule the first assigned error

## Jury Instruction and Non-Deadly Force

{¶26} In the second assigned error, Amborski argues the trial court erred when it refused to give a jury instruction on the use of non-deadly force.

{¶27} An instruction on the use of non-deadly force requires a defendant to establish (1) that the defendant was not at fault in creating the situation giving rise to the altercation and (2) that he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause death or

great bodily harm. *See* 4 Ohio Jury Instructions, Section 411.33; *State v. Griffin*, 2d Dist. No. 20681, 2005-Ohio-3698, citing *State v. Hansen*, 4th Dist. No. 01CA15, 2002-Ohio-6135.

{¶28} Amborski asserts that he did not use deadly force. Deadly force is defined as "any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2). It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death. *In re R.W.*, 8th Dist. No. 91923, 2009-Ohio-1255, citing *State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982).

{¶29} As previously stated, several patrons were gathered outside the lounge and in the immediate vicinity when Amborski's discharged the firearm. Amborski maintains he only fired warning shots into air, while several witness testified he fired at Seegert. However, whether Amborski only fired warning shots into the air or fired directly at Seegert, bullets shot in the air will obviously come down somewhere.

{¶30} Thus, there was a substantial risk that any of the patrons present could have suffered injury or death when the bullets came down. As such, the trial court did not err when it did not instruct the injury on self-defense involving non-deadly force. Accordingly, we overrule the second assigned error.

## Firearm Specification and Enhancement

{¶31} In the third assigned error, Amborski argues the firearm specification should not have been used to enhance the offense of discharge of a firearm on or near prohibited premises.

{¶32} In *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, the Ohio Supreme Court conclusively stated that a firearm specification is not a criminal offense; rather, it is a sentence enhancement. "We hold that R.C. 2941.145 and 2929.14(D) define a sentence enhancement that attaches to a predicate offense." *Id*. at ¶ 16. "Penalties for a specification and its predicate offense do not merge under R.C. 2941.25." *Id*., at paragraph two of the syllabus.

*See also State v. Wilson*, 8th Dist. No. 97465, 2012-Ohio-3567.

{¶33} Similar to *Ford*, Amborski was convicted of improperly discharging a firearm; Ford at or into a habitation under R.C. 2923.161(A)(1), Amborski on or near prohibited premises under R.C. 2923.162(A)(3). Both Ford and Amborski had a three-year firearm specification under R.C. 2941.145. Ford and Amborski also received similar sentences: three years on the firearm specification to be served prior to and consecutively to the underlying offense of improperly discharging a firearm at or into a habitation on or near prohibited premises.

{¶34} This case is, therefore, consistent with *Ford*. In light of the Supreme Court's holding in *Ford*, the trial court did not err by sentencing Amborski on the firearm specification to a three-year term to be served prior to and consecutive to the one year

term on the base charge of discharge of a firearm on or near prohibited premises. Accordingly, *Ford* requires that we overrule Amborski's third assigned error.

## Discovery Violations

{¶35} In the fourth assigned error, Amborski argues the state's discovery violations denied him a fair trial.

{¶36} Crim.R. 16 governs discovery in criminal cases and states that the purpose of discovery is to "provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A).

{¶37} If a party fails to comply with Crim.R. 16's discovery requirements, a trial court "may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing into evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L).

{¶38} It is within the trial court's sound discretion to decide what sanction to impose for a discovery violation. *State v. Darmond*, 8th Dist. Nos. 96373 and 96374, 2011-Ohio-6160, citing *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987). Therefore, a trial court's discovery sanction will not be overturned unless it was unreasonable, unconscionable, or arbitrary. *State v. Engle*, 166 Ohio App.3d 262, 2006-Ohio-1884, 850 N.E.2d 123, ¶ 7 (3d Dist).

{¶39} In the instant case, Seegert testified that a detective had taken pictures of his injuries on the night in question that showed how badly he had been beaten. However, neither the defense attorney nor the lead detective was aware of the pictures being taken. It was later discovered that one of the detectives, Michael Klein, had taken the pictures but failed to upload it to the shared file. Defense counsel requested a mistrial, which the trial court denied, but the court prevented the state from introducing or referencing the pictures during the trial.

{¶40} Our review of the record indicates that the trial court gave careful and deliberate consideration to the defense counsel's request for a mistrial. Further, given that the alleged picture would have shown how badly Seegert was beaten, the picture would have been inculpatory and thus supportive of the state's case.

{¶41} Consequently, on the record before us, we cannot find that the trial court abused its discretion, especially in light of the fact that the alleged picture would have been inculpatory. Accordingly, we overrule the fourth assigned error.

{¶42} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
KATHLEEN ANN KEOUGH, J., CONCUR